Jaimee Katz Sussner, Esq.
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Tel.: 973.643.7000
Email: jsussner@sillscummis.com
*Attorneys for Plaintiff*
  *First American Title Insurance Company*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY, | Civil Action No._____ |
| Plaintiff, | |
| v. | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| BANK OF AMERICA, N.A., successor-by-merger to BAC HOME LOANS SERVICING, LP f/k/a COUNTRYWIDE HOME LOANS SERVICING, LP, successor-by-assignment to MLD MORTGAGE INC. d/b/a THE MONEY STORE, | |
| Defendant. | |

Plaintiff First American Title Insurance Company ("First American" or "Plaintiff"), by and through its attorneys, Sills Cummis & Gross P.C., alleges and states as follows:

### Nature of this Action

1. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202.

2. The real property that is the subject of this action consists of a residence located at 49 Ridgedale Avenue, Morristown, New Jersey (the "Property") that, until 2016, had been owned by Mark S. Csantaveri ("Csantaveri"). In or around the time that his title was lost to

foreclosure, Csantaveri pled guilty to one charge of conspiracy to commit bank fraud that involved no less than seven fraudulent real estate transactions between 2006 and 2012 and resulted in losses to mortgage lenders totaling $2,560,688.97. The subject transaction is believed to be among them.

3.      Csantaveri purchased the Property for $475,000 by Deed dated December 15, 2008 and recorded on March 4, 2009. Shortly thereafter, Csantaveri is believed to have requested and received new mortgage financing in the amount of $466,033 from Security Atlantic Mortgage Co. ("Security Atlantic") that was secured by a mortgage in that amount, dated June 23, 2009, and recorded on August 19, 2009 (the "Security Atlantic Mortgage"). Csantaveri ostensibly refinanced again on November 4, 2009, this time with a loan from MLD Mortgage Inc. d/b/a The Money Store ("MLD"), in the amount of $474,188. It was later discovered that Csantaveri and the lawyer claiming to be his closing attorney, Shane Charles De Leon, Esq. ("De Leon"), falsified certain closing documents to reflect that $470,347.51 had been paid to Security Atlantic to discharge its mortgage when no such payment was made. De Leon was disbarred by the New Jersey Supreme Court on February 25, 2015, and by the United States District Court for the District of New Jersey on July 1, 2015.

4.      De Leon represented to MLD that he would serve as the settlement agent for its loan transaction and, as such, received and agreed to honor exhaustive closing instructions that MLD provided to him. First American's only involvement with this transaction was its agent's issuance of a title insurance commitment on its behalf to MLD for an ALTA loan policy, Commitment No. PTS-60, dated October 12, 2009 and amended on November 3, 2009 (the "Commitment"). Schedule B-I of the Commitment alerted MLD that the Security Atlantic Mortgage was required to be cancelled as a condition to the issuance of a loan policy. This was

not done within 180 days of the Commitment Date. As a result, the Commitment expired by its own terms and a policy was not issued.

5. More than four years later, Bank of America, N.A., successor-by-merger to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP, successor-by-assignment to MLD ("BOA"), interposed a claim to First American, by letter dated January 20, 2014, in which it identified the Security Atlantic Mortgage and a Federal tax lien as "issues" for which coverage was sought under a policy that it mistakenly believed it had received. After initially directing it to proceed with a foreclosure action, First American denied the claim on the basis that (i) the Commitment expired without satisfaction of the closing requirements that would have entitled MLD to receive a policy, (ii) MLD was unable to demonstrate that it funded its loan through De Leon, and (iii) a closing services letter was not issued for De Leon, in any event.

6. Determined to engineer a basis for coverage, in November 2016, BOA redirected its efforts to a different department within First American to request a "replacement" policy utilizing an administrative mechanism that First American offers for misplaced policies. The individual that received the request mistakenly honored it and, in 2016, First American issued a "replacement" ALTA Loan Policy (6-17-06) to MLD, Policy No. PPPTS60, with an effective date retroactive to February 22, 2010, that did not address or except the Security Atlantic Mortgage (the "Policy").

7. BOA was not entitled to receive, and should not have received, the Policy. Even if BOA could establish a basis to receive a policy, any such policy should have excepted from coverage loss or damage arising from the Security Atlantic Mortgage that MLD and its putative settlement agent failed to cancel. A declaration should therefore be entered rescinding the Policy, or, at a minimum, reforming it to except from coverage any loss or damage

attributable to the Security Atlantic Mortgage. Because BOA's claim would not be covered in either event, a declaration should also be entered that BOA is not entitled to indemnification under the Policy for any loss attributable to the Security Atlantic Mortgage.

### The Parties

8. Plaintiff First American is a title insurance company organized under the laws of the State of Nebraska with a principal place of business located at 1 First American Way, Santa Ana, California. First American is a citizen of Nebraska and California pursuant to 28 U.S.C. § 1332(c).

9. Defendant BOA is a bank organized under the laws of the State of Delaware with a principal place of business located at 100 North Tyron Street, Charlotte, North Carolina. BOA is a citizen of Delaware and North Carolina pursuant to 28 U.S.C. § 1332(c).

### Jurisdiction and Venue

10. Diversity jurisdiction exists in this Court under 28 U.S.C. § 1332, in that complete diversity exists between the parties and the amount in controversy exceeds $75,000.

11. Venue is proper in this District under 28 U.S.C. § 1391 because certain events that gave rise to this Complaint took place in this District, and the subject real property is located in this District.

### Background

12. By Deed dated December 15, 2008, and recorded on March 4, 2009, Csantaveri purchased the Property for $475,000. The Deed reflects that De Leon represented Csantaveri in connection with his purchase, served as the settlement agent for that transaction and prepared the Deed with which title was conveyed.

13. Six months later, Csantaveri is believed to have requested and received new mortgage financing from Security Atlantic in the amount of $466,033 on June 23, 2009. The

Deed again reflects that De Leon served as the settlement agent for the transaction, closed the loan and recorded the Security Atlantic Mortgage.

14. Upon information and belief, on or about November 4, 2009, Csantaveri sought and received a new mortgage loan from MLD in the amount of $477,188. As before, the Deed and surrounding closing documents reflect that De Leon served as the settlement agent for the transaction, closed the loan and recorded the mortgage that Csantaveri and his wife executed in that amount, dated November 4, 2009, and recorded on February 22, 2010 (the "BOA Mortgage").

15. Before the loan was scheduled to close, MLD issued exhaustive closing instructions to De Leon, in his capacity as the putative settlement agent, which he signed and agreed to honor. Among other things, MLD's closing instructions required De Leon to: (i) obtain a closing services letter in favor of MLD in advance of the closing, (ii) obtain all deeds and releases necessary to clear title, (iii) warrant that "all instructions have been complied with, that all liens have been paid in full, and releases have been or will be secured," (iv) prepare a HUD-1 settlement statement that accurately reflects all receipts, payees and disbursements, and (v) obtain an ALTA loan policy in favor of MLD, with endorsements, within two weeks after the closing. De Leon did none of things.

16. MLD's only interaction with First American or its agent, Preferred Title Services, LLC ("Preferred"), was its request for the issuance of the Commitment, which it received by letter dated October 23, 2009. The Commitment explicitly provided that "[i]f the Requirements shown in this Commitment have not been met within 180 days after the Commitment Date, our obligation under this Commitment will end."

17. Schedule B-I of the Commitment contained the requirements that "must be met" for a title policy to issue. Among other things, Paragraph 4 of Schedule B-I of the Commitment required the Security Atlantic Mortgage to be cancelled as follows:

> 4. CANCELLATION of MORTGAGE: made by Mark Csantaveri and Alexandra Csantaveri, TO Security Atlantic Mortgage, Inc., Dated June 23, 2009, Recorded August 19, 2009 in Mortgage Book 21376, Page 257, securing the sum of $466,033.00.

18. The HUD-1 settlement statement reflects that the loan closing occurred at De Leon's office in Morristown, New Jersey on November 4, 2009. Neither First American nor Preferred was asked to attend, to provide closing services or to oversee any aspect of the transaction.

19. Upon information and belief, De Leon prepared the HUD-1 settlement statement and provided it to MLD. Line 110 reflected a "Security Atlantic Payoff" in the amount of $470,347.51, which De Leon certified to be "a true and accurate statement… to the best of my knowledge and belief." Despite this, there is no evidence that MLD transmitted the loan proceeds to De Leon, or that De Leon transmitted any funds to Security Atlantic. Ultimately, the Security Atlantic Mortgage was not satisfied or cancelled as required by the Commitment.

20. By Assignment of Mortgage dated September 10, 2011, and recorded on September 15, 2011, the BOA Mortgage, together with the indebtedness that it was pledged to secure, were assigned to BOA. By virtue of that assignment, BOA became the successor to MLD and the holder of the BOA loan and Mortgage.

21. Csantaveri is alleged to have defaulted under the BOA loan, resulting in its commencement of a foreclosure action. It was then that BOA discovered that the Security Atlantic Mortgage remained of record, and that a Federal tax lien (that is now moot) had apparently not been addressed, either. Consequently, BOA served a notice of claim upon First

American, dated January 20, 2014, in which it asserted an entitlement to indemnification under a title policy that was never issued.

22. By letter dated February 25, 2015, First American advised BOA that it would obtain a satisfaction, cancellation or release of the Security Atlantic Mortgage, and that BOA should proceed with its foreclosure action. When First American's efforts proved unsuccessful, it further advised, by letter dated June 8, 2015, that it would indemnify BOA, or insure a post foreclosure purchaser of the Property from BOA, subject to the terms and provisions of any policy.

23. By email dated September 15, 2016, BOA advised (through its servicer) that Security Atlantic had completed a foreclosure action of its own, and that a sheriff's sale was imminent. The sheriff's sale was conducted shortly thereafter, extinguishing the BOA Mortgage and transferring title to the Property to the foreclosing mortgagee by Sheriff's Deed dated December 1, 2016, and recorded on March 1, 2017.

24. By letter dated September 21, 2016, and on numerous occasions thereafter, First American requested that BOA provide information relevant to the amount and basis for its claim. BOA, through its servicer, eventually conceded that it was unable to provide proof that it funded the loan through De Leon, or that a closing services letter had been issued for De Leon.

25. Cognizant that a claim under a non-existent policy would be denied, BOA attempted to engineer a basis for its claim in November 2016 by requesting, through a department unrelated to the Claims Center with which it had been communicating, that First American issue a "replacement" policy utilizing an administrative mechanism that First

7

American offers for misplaced policies. The request was mistakenly honored and, in 2016, First American issued the Policy without addressing or excepting the Security Atlantic Mortgage.

26. By letter dated March 8, 2017, First American denied BOA's claim on the basis that: (i) the Commitment expired 180 days after the Commitment Date due to BOA's failure to cancel the Security Atlantic Mortgage, as required by Paragraph 4 of Schedule B-I of the Commitment, (ii) BOA did not possess a closing services letter for De Leon's conduct in connection with the closing, and (iii) BOA did not possess proof that it, or its predecessor, transmitted funds to De Leon that were allegedly mishandled.

27. BOA was aware that it was ineligible to receive an ALTA loan policy of title insurance at the time that it requested a "replacement" policy in November 2016 due to, among other things, the expiration of the Commitment on April 21, 2010.

28. First American issued the Policy due to mistake or inadvertence, and will be materially prejudiced if the Policy is not rescinded.

29. Even if BOA could demonstrate a basis to receive a loan policy of title insurance for the BOA Mortgage, any policy issued should have contained an exception to coverage for any loss or damage alleged to arise from the Security Atlantic Mortgage that was not cancelled.

30. Because coverage is unavailable to BOA for the Security Atlantic Mortgage regardless of whether the Policy is rescinded or reformed, BOA is not entitled to indemnification under the Policy for loss or damage arising therefrom.

## COUNT I
**(Rescission of Policy)**

31.     First American repeats and realleges the allegations set forth in the foregoing paragraphs above as if fully set forth herein.

32.     The Commitment provides that "If the Requirements shown in this Commitment have not been met within 180 days after the Commitment Date, our obligation under this Commitment will end."

33.     MLD failed to cancel the Security Atlantic Mortgage within 180 days after the Commitment Date as required in Paragraph 4 of Schedule B-I of the Commitment.

34.     MLD became ineligible for the issuance of a title policy on April 21, 2010 as a result of its failure to comply with the requirement that it cancel the Security Atlantic Mortgage by that date.

35.     Cognizant that the Commitment had expired, and that it was not entitled to receive a title policy, BOA sought to procure a title policy from First American by mischaracterizing its request as an application for a "replacement" policy that was materially incorrect and misleading when made.

36.     The Policy was issued by First American in error.

37.     Rescission of the Policy will restore the parties to their pre-policy positions without prejudice to either of them or to innocent third parties.

38.     Rescission of the Policy is warranted by the equities of this matter.

WHEREFORE, First American demands judgment in its favor, and against BOA, as follows:

a.     Declaring and adjudging that the Policy is rescinded, *nunc pro tunc,* and is void and unenforceable in all respects;

      b.      Declaring and adjudging that First American is not liable for, or obligated to, indemnify BOA under the Policy;

      c.      Granting First American legal fees and costs of suit; and

      d.      Granting First American such other and further relief as the Court may deem equitable and just.

## Count II
### (Reformation of Policy)

39.      First American repeats and realleges the allegations set forth in the foregoing paragraphs above as if fully set forth herein.

40.      In the event that the Court finds that BOA is entitled to the issuance of a title policy, any such policy should except from coverage loss or damage arising from the Security Atlantic Mortgage that was not cancelled within 180 days of the Commitment Date, as required by the Commitment.

41.      Through error or inadvertence, Schedule B-I of the Policy does not address or except coverage for the Security Atlantic Mortgage.

42.      BOA is not entitled to coverage for the Security Atlantic Mortgage that was not cancelled as required by the Commitment.

43.      The Policy should be reformed, *nunc pro tunc*, to include a new paragraph on Schedule B-I that recites that the Policy does not insure against loss or damage, and that First American will not pay any costs, attorneys' fees, or expenses, that may arise by reason of the Security Atlantic Mortgage.

44.      Reformation of the Policy is warranted by the equities of this matter.

WHEREFORE, First American demands judgment in its favor, and against BOA, as follows:

      a.      Declaring and adjudging that the Policy is reformed, *nunc pro tunc,* to include a new paragraph on Schedule B-I that recites that the Policy does not insure against loss or damage, and that First American will not pay any costs, attorneys' fees, or expenses, that may arise by reason of the Security Atlantic Mortgage;

      b.      Declaring and adjudging that First American is not liable for, or obligated to, indemnify BOA under the Policy;

      c.      Granting First American legal fees and costs of suit; and

      d.      Granting First American such other and further relief as the Court may deem equitable and just.

## COUNT III
### (Declaratory Judgment)

45.      First American repeats and realleges the allegations set forth in the foregoing paragraphs above as if fully set forth herein.

46.      The Policy was erroneously issued, as well as erroneously drafted, insofar as it fails to except from coverage loss or damage attributable to the Security Atlantic Mortgage that was not cancelled as required by Paragraph 4 of Schedule B-I of the Commitment.

47.      The failure to cancel the Security Atlantic Mortgage within 180 days of the Commitment Date precludes any claim for coverage under the Commitment and Policy that were issued.

48.      There presently exists an actual controversy between First American and BOA concerning BOA's alleged entitlement to receive a policy, the terms of coverage to which it would be entitled, and First American's obligations under the Policy that was inadvertently issued to BOA, which may be resolved by a declaratory judgment of this Court. Accordingly, this matter is ripe for adjudication.

49. By reason of the foregoing, a declaratory judgment is both necessary and proper, pursuant to 28 U.S.C. §2201(a), to set forth and determine the parties' rights, obligations, and liabilities, if any, upon rescission or reformation of the Policy.

WHEREFORE, First American demands judgment in its favor, and against BOA, as follows:

a. Declaring and adjudging that the Policy is rescinded, *nunc pro tunc,* and is void and unenforceable in all respects;

b. Alternatively, in the event that the Policy is not rescinded, declaring and adjudging that the Policy is reformed, *nunc pro tunc,* to reflect on Schedule B-I that it does not insure against loss or damage, and that First American will not pay any costs, attorneys' fees, or expenses, that may arise by reason of the Security Atlantic Mortgage;

c. Declaring and adjudging that, in all events, any claim made by, or on behalf of, BOA that relates to, or results from, the Security Atlantic Mortgage is ineligible for coverage or indemnification under the Policy;

d. Granting First American legal fees and costs of suit; and

e. Granting First American such other and further relief as the Court may deem equitable and just.

        SILLS CUMMIS & GROSS P.C.
        Attorneys for Plaintiff
         First American Title Insurance Company


        By: /s/ Jaimee Katz Sussner
         JAIMEE KATZ SUSSNER

Dated: June 5, 2019

**Local Civil Rule 11.2 Certification**

Pursuant to Local Civil Rule 11.2, the undersigned attorney for Plaintiff certifies that, to the best of her knowledge, the matter in controversy is not the subject of another action pending in any United States court or in any arbitration or administrative proceeding.

SILLS CUMMIS & GROSS P.C.
Attorneys for Plaintiff
  First American Title Insurance Company


By: /s/ Jaimee Katz Sussner
     JAIMEE KATZ SUSSNER

Dated:  June 5, 2019