Jaimee Katz Sussner, Esq.
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Tel.: 973.643.7000
Email: jsussner@sillscummis.com
*Attorneys for Plaintiff*
  *First American Title Insurance Company*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY, | Civil Action No. 2:19-cv-13422-ES-SCM |
| Plaintiff, | |
| v. | **AMENDED COMPLAINT FOR DECLARATORY JUDGMENT** |
| BANK OF AMERICA, N.A., successor-by-merger to BAC HOME LOANS SERVICING, LP f/k/a COUNTRYWIDE HOME LOANS SERVICING, LP, successor-by-assignment to MLD MORTGAGE INC. d/b/a THE MONEY STORE, | |
| Defendant. | |

Plaintiff First American Title Insurance Company ("First American" or "Plaintiff"), by and through its attorneys, Sills Cummis & Gross P.C., alleges and states as follows:

**Nature of this Action**

1.  This action arises under the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202.

2.  The real property that is the subject of this action consists of a residence located at 49 Ridgedale Avenue, Morristown, New Jersey (the "Property") that, until 2016, had been owned by Mark S. Csantaveri ("Csantaveri"). In or around the time that his title was lost to

foreclosure, Csantaveri pled guilty to one charge of conspiracy to commit bank fraud that involved no less than seven fraudulent real estate transactions between 2006 and 2012 and resulted in losses to mortgage lenders totaling $2,560,688.97. The subject transaction is believed to be among them.

3. Csantaveri purchased the Property for $475,000 by Deed dated December 15, 2008 and recorded on March 4, 2009. Shortly thereafter, Csantaveri is believed to have requested and received new mortgage financing in the amount of $466,033 from Security Atlantic Mortgage Co. ("Security Atlantic") that was secured by a mortgage in that amount, dated June 23, 2009, and recorded on August 19, 2009 (the "Security Atlantic Mortgage"). Csantaveri ostensibly refinanced again on November 4, 2009, this time with a loan from MLD Mortgage Inc. d/b/a The Money Store ("MLD"), in the amount of $474,188. It was later discovered that Csantaveri and the lawyer claiming to be his closing attorney, Shane Charles De Leon, Esq. ("De Leon"), falsified certain closing documents to reflect that $470,347.51 had been paid to Security Atlantic to discharge its mortgage when no such payment was made. De Leon was disbarred by the New Jersey Supreme Court on February 25, 2015, and by the United States District Court for the District of New Jersey on July 1, 2015.

4. De Leon represented to MLD that he would serve as the settlement agent for its loan transaction and, as such, received and agreed to honor exhaustive closing instructions that MLD provided to him. First American's only involvement with this transaction was its agent's issuance of a title insurance commitment on its behalf to MLD for an ALTA loan policy, Commitment No. PTS-60, dated October 12, 2009 and amended on November 3, 2009 (the "Commitment"). Schedule B-I of the Commitment alerted MLD that the Security Atlantic Mortgage was required to be cancelled as a condition to the issuance of a loan policy. This was

not done within 180 days of the Commitment Date. As a result, the Commitment expired by its own terms and a policy was not issued.

5. More than five years later, Bank of America, N.A., successor-by-merger to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP, successor-by-assignment to MLD ("BOA"), interposed a written claim to First American, on January 20, 2015, in which it identified the Security Atlantic Mortgage and a Federal tax lien as "issues" for which coverage was sought under a policy that it mistakenly believed it had received. After initially directing BOA to proceed with an action to foreclose its mortgage, First American conducted an extensive investigation into BOA's request for coverage that resulted in a denial of the claim, on March 8, 2017, on the basis that: (i) MLD failed to satisfy certain closing requirements in the Commitment that would have entitled MLD to receive a policy without an exception for the Security Atlantic Mortgage, (ii) MLD was unable to demonstrate that it funded its loan through De Leon, and (iii) a closing services letter was not issued for De Leon, in any event.

6. After it became clear that BOA was likely to be found to be ineligible for coverage, by email dated November 4, 2016, BOA redirected its efforts to a different department within First American from which it requested a "copy" of a policy that it knew had never been issued utilizing an administrative mechanism that First American offers for misplaced policies through a dedicated email portal. The individual that received the request at First American mistakenly honored it, and First American issued a replacement ALTA Loan Policy (6-17-06) to MLD shortly thereafter, Policy No. PPPTS60, with an effective date retroactive to February 22, 2010, that did not address or except the Security Atlantic Mortgage (the "Policy").

7. BOA was not entitled to receive, and should not have received, the Policy without an exception for the Security Atlantic Mortgage. Additionally, any policy issued should have excepted from coverage loss or damage arising from the Security Atlantic Mortgage that

3

MLD and its settlement agent failed to cancel within 180 days of the Commitment Date. Consequently, a declaration should be entered rescinding the Policy, or, at a minimum, reforming it to except from coverage any loss or damage attributable to the Security Atlantic Mortgage. Because BOA's claim would not be covered in either event, a declaration should also be entered that BOA is not entitled to coverage or indemnification under the Policy for any loss attributable to the Security Atlantic Mortgage.

### The Parties

8. Plaintiff First American is a title insurance company organized under the laws of the State of Nebraska with a principal place of business located at 1 First American Way, Santa Ana, California. First American is a citizen of Nebraska and California pursuant to 28 U.S.C. § 1332(c).

9. Defendant BOA is a bank organized under the laws of the State of Delaware with a principal place of business located at 100 North Tyron Street, Charlotte, North Carolina. BOA is a citizen of Delaware and North Carolina pursuant to 28 U.S.C. § 1332(c).

### Jurisdiction and Venue

10. Diversity jurisdiction exists in this Court under 28 U.S.C. § 1332, in that complete diversity exists between the parties and the amount in controversy exceeds $75,000.

11. Venue is proper in this District under 28 U.S.C. § 1391 because certain events that gave rise to this Complaint took place in this District, and the subject real property is located in this District.

### Background

12. By Deed dated December 15, 2008, and recorded on March 4, 2009, Csantaveri purchased the Property for $475,000. The Deed reflects that De Leon represented

Csantaveri in connection with his purchase, served as the settlement agent for that transaction, and prepared the Deed with which title was conveyed.

13. Six months later, Csantaveri is believed to have requested and received new mortgage financing from Security Atlantic in the amount of $466,033 on June 23, 2009. The Deed again reflects that De Leon served as the settlement agent for the transaction, closed the loan and recorded the Security Atlantic Mortgage.

14. Upon information and belief, on or about November 4, 2009, Csantaveri sought and received a new mortgage loan from MLD in the amount of $477,188. As before, the Deed and surrounding closing documents reflect that De Leon served as the settlement agent for the transaction, closed the loan, and recorded the mortgage that Csantaveri and his wife executed in that amount, dated November 4, 2009, and recorded on February 22, 2010 (the "BOA Mortgage").

15. Before the loan was scheduled to close, MLD claims to have issued exhaustive closing instructions to De Leon, in his capacity as the putative settlement agent, which purport to reflect his signature and agreement to honor those instructions. Among other things, MLD's closing instructions required De Leon to: (i) obtain a closing services letter in favor of MLD in advance of the closing, (ii) obtain all deeds and releases necessary to clear title, (iii) warrant that "all instructions have been complied with, that all liens have been paid in full, and releases have been or will be secured," (iv) prepare a HUD-1 settlement statement that accurately reflects all receipts, payees and disbursements, and (v) obtain an ALTA loan policy in favor of MLD, with endorsements, within two weeks after the closing. None of these things occurred.

16. MLD had no interaction with First American at any point prior to this transaction, and only a single interaction with First American's agent, Preferred Title Services,

LLC ("Preferred"), when it requested and received the Commitment by letter dated October 23, 2009. The Commitment explicitly provided that "[i]f the Requirements shown in this Commitment have not been met within 180 days after the Commitment Date, our obligation under this Commitment will end."

17. Schedule B-I of the Commitment contained the requirements that "must be met" for a title policy to issue. Among other things, Paragraph 4 of Schedule B-I of the Commitment required the Security Atlantic Mortgage to be cancelled as follows:

> 4. CANCELLATION of MORTGAGE: made by Mark Csantaveri and Alexandra Csantaveri, TO Security Atlantic Mortgage, Inc., Dated June 23, 2009, Recorded August 19, 2009 in Mortgage Book 21376, Page 257, securing the sum of $466,033.00.

18. The HUD-1 settlement statement reflects that the loan closing occurred at De Leon's office in Morristown, New Jersey on November 4, 2009. Neither First American nor Preferred was asked to attend, to provide closing services, or to oversee any aspect of the transaction.

19. The HUD-1 settlement statement that was provided to MLD purports to have been prepared by De Leon. Line 110 reflected a "Security Atlantic Payoff" in the amount of $470,347.51, which De Leon certified to be "a true and accurate statement… to the best of my knowledge and belief." Despite this, there is no evidence that MLD transmitted the loan proceeds to De Leon, or that De Leon transmitted any funds to Security Atlantic. Ultimately, the Security Atlantic Mortgage was not satisfied or cancelled as required by the Commitment.

20. By Assignment of Mortgage dated September 10, 2011, and recorded on September 15, 2011, the BOA Mortgage, together with the indebtedness that it was pledged to secure, were assigned to BOA. By virtue of that assignment, BOA became the successor to MLD and the holder of the BOA loan and Mortgage.

21. Csantaveri is alleged to have defaulted under the BOA loan, resulting in BOA's commencement of a foreclosure action. It was then that BOA claims to have discovered that the Security Atlantic Mortgage remained of record, and that a Federal tax lien (that is now moot) had apparently not been addressed, either. As a result, Orjeta Camovic, a paralegal with BOA's counsel, Knuckles, Komosinski & Elliott LLP ("KKE"), tendered a notice of claim to First American's Claims Department on behalf of BOA, dated January 20, 2014,[1] asserting an entitlement to indemnification under a title policy that was never issued. Despite a reference to a title policy in the January 20 letter, KKE enclosed a copy of the expired Commitment, instead. First American acknowledged receipt of the claim the following day.

22. By email dated February 5, 2015, Carolyn Rhee, Esq., Claims Counsel for First American, requested a complete copy of BOA's loan file from KKE to assist with its investigation of the claim.

23. By email dated February 13, 2015, Ms. Rhee requested that BOA (i) provide a copy of any Closing Service Letter issued on behalf of First American which identified De Leon as the closing attorney for this transaction, and (ii) advise of the status of its foreclosure efforts.

24. By letter dated February 25, 2015, Ms. Rhee advised Ms. Camovic that First American would obtain a satisfaction, cancellation, or release of the Security Atlantic Mortgage, and that BOA should proceed with its foreclosure action. When First American's efforts to obtain a release of the Security Atlantic Mortgage proved unsuccessful, First American's Claims Services Department advised, by letter dated June 8, 2015, that it would indemnify BOA, or insure a post-foreclosure purchaser of the Property from BOA, subject to the

---

[1] The letter appears to have been incorrectly dated January 20, 2014, as it was actually transmitted on January 20, 20<u>15</u>.

7

terms and provisions of any policy that had been issued to BOA. First American did not confirm that a title policy had ever been issued, or commit to issue a title policy if one had not.

25. By email dated September 15, 2016, counsel for BOA, Ashley Rose, Esq., with Knuckles, Komosinski & Manfro LLP ("KKM"), formerly KKE, advised First American that Security Atlantic had completed a foreclosure action of its own, and that a sheriff's sale was scheduled on September 22, 2016 that would to extinguish the BOA Mortgage.

26. By email dated September 19, 2016, Rita Buscher, Esq., Claims Counsel for First American, advised Ms. Rose that First American did not intend to bid at the sheriff's sale and that a formal letter explaining First American's coverage position would be forthcoming.

27. By letter dated September 21, 2016, one day before the sheriff's sale, Ms. Buscher wrote to Ms. Rose to request that BOA provide information relevant to the amount and basis for its title claim. First American repeated its request for this information in numerous emails throughout September and October 2016 that Ms. Buscher exchanged with (i) Ms. Rose, BOA's counsel at KKM, (ii) Robyn Telles, a Senior Title Curative Specialist and Default Senior Team Lead at Carrington Mortgage Services, LLC, BOA's loan servicer ("Carrington"), and (iii) Heather Tanory, a Foreclosure Specialist at Carrington. All communications with First American's Claims Department concerning BOA's claim in September 2016 and thereafter were undertaken by BOA's counsel (KKM) and/or its loan servicer (Carrington), without any direct contact with or communications from BOA itself.

28. Security Atlantic's sheriff's sale was conducted on September 22, 2016, extinguishing the BOA Mortgage and transferring title to the Property to the foreclosing mortgagee by Sheriff's Deed dated December 1, 2016, and recorded on March 1, 2017.

29. By email dated October 4, 2016, Ms. Buscher, on behalf of First American, advised Ms. Telles and Ms. Rose that the materials received in furtherance of First American's investigation remained incomplete, and that First American continued to require the following missing items:

> The entire loan origination package… it is imperative that the claimant provide the mortgage loan commitment, the loan closing package, the loan closing instructions (we must be able to determine to whom the instructions were provided) and proof of funding to the settlement agent (again, we must be able to determine to whom the funds were paid).

30. While Carrington was able to provide the lender's closing instructions that reflected an intention to wire funds to De Leon, it ultimately conceded in a series of emails transmitted on October 5 and 6, 2016 that it was unable confirm that the closing funds were in fact transmitted to De Leon, and that Carrington had already supplied "all [documents] that we have." Consequently, Carrington advised that it would request the missing items directly from BOA.

31. In an email dated October 20, 2016, Ms. Buscher followed up on First American's request for the missing items, and again advised Ms. Camovic and Ms. Telles that: "The insured claimant must provide proof of loss which in this case includes proof of funding of the loan, whether by check or wire transfer or the like. First American must confirm to whom the named insured transferred the proceeds and confirm that the mortgage proceeds were actually paid." Ms. Telles continued to assure First American that Carrington was pursuing the missing information from BOA. On that basis, Ms. Buscher agreed to "await a response from BANA" before completing her investigation and rendering a coverage determination that was increasingly likely to be denied.

32. Upon information and belief, BOA was cognizant that these continuing deficiencies were likely to result in a denial of its claim in September and October 2016, at the

9

latest -- particularly where BOA could not demonstrate that the loan was funded through De Leon, or that a closing service letter had been issued to De Leon. Accordingly, upon information and belief, BOA attempted to procure a title policy without an exception for the Security Atlantic Mortgage by initiating contact with a different department within First American that was unrelated to the Claims Services Department with which Carrington had been communicating on BOA's behalf up to that point. Indeed, without alerting the Claims Services Department at First American, a BOA employee having no prior involvement with the claim, Ha T. Nguyen, transmitted an email to First American's Policy Procurement Department, dated November 4, 2016, in which he requested that First American provide BOA with a "copy" of the "Final Title Policy for this file please," utilizing a dedicated email portal that First American offers for misplaced policies.

33. BOA's request for a replacement policy was mistakenly approved and honored, and in late 2016, First American mistakenly issued the Policy without addressing or excepting the Security Atlantic Mortgage.

34. By email dated November 7, 2016 – three days after BOA's on-line request for a replacement policy -- Ms. Telles continued to email First American's Claims Services Department concerning its ongoing investigation without disclosing BOA's concurrent efforts to obtain a title policy through a different department. Instead, Ms. Telles continued to update Ms. Buscher on Carrington's inability to confirm that the loan was funded through De Leon, or that a closing services letter had been issued for De Leon as an approved settlement agent as though BOA's request for the issuance of a title policy had never occurred.

35. By email dated January 17, 2017, Ms. Camovic (with KKM) requested that Ms. Buscher provide an update on the status of BOA's claim without disclosing its efforts to obtain a title policy from a different department in the intervening months. Ms. Buscher

reminded Ms. Camovic, Ms. Telles, and Ms. Rose that "First American is still waiting for the claimant to provide proof of funding of the loan proceeds and the loan closing instructions."

36. First American, Carrington, and KKM continued to exchange emails throughout January, February, and March 2017 in which Ms. Buscher repeated her requests for proof of funding and proof that a closing services letter had been issued on behalf of First American identifying De Leon as the settlement agent for the transaction. In an exhaustive email exchange between First American and Carrington that continued from March 1 to 3, 2017, Ms. Telles finally advised that all available materials had been supplied and that no additional materials would be forthcoming. Because BOA still had not provided proof of funding or a copy of a closing services letter identifying De Leon as the settlement agent, by email dated March 3, 2017, Ms. Buscher explained that she must conclude that BOA did not possess these proofs and would render a coverage determination on that basis.

37. By letter dated March 8, 2017, First American denied BOA's claim on the basis that: (i) "the requirement for issuance of a Policy set forth in Schedule B-I, Paragraph 4 [of the Commitment] was not satisfied," (ii) BOA did not possess a closing services letter for De Leon's conduct in connection with the closing, and (iii) BOA did not possess proof that it, or its predecessor, transmitted funds to De Leon that were allegedly mishandled.

38. BOA was aware that it was ineligible to receive an ALTA loan policy of title insurance without an exception for the Security Atlantic Mortgage at the time that it requested a "copy" of a policy that it knew had never been issued to it from First American's Policy Procurement Department.

39. BOA's request for a "copy" of a non-existent policy through a dedicated email portal maintained separately from, and unrelated to, the Claims Services Department constituted a material misrepresentation, omission, or mischaracterization of fact that, upon

11

information and belief, was designed to conceal the existence of an active claim, to create the misapprehension that a title policy had already been issued to BOA that had been lost or misplaced, and to mislead First American into issuing a title policy without an exception for the Security Atlantic Mortgage before its claim was denied.

40. Because BOA was not entitled to receive, and should not have received, the Policy without an exception for the Security Atlantic Mortgage, First American will be materially prejudiced if the Policy that was issued without this exception is not rescinded.

41. Because any Policy issued to BOA should have contained a coverage exception for the Security Atlantic Mortgage, in the event the Policy is not rescinded, Schedule B-I of the Policy should be reformed to reflect that First American is not liable to it for any loss or damage alleged to arise from the Security Atlantic Mortgage that was not cancelled as required by the Commitment.

42. Because coverage is unavailable to BOA for the Security Atlantic Mortgage regardless of whether the Policy is rescinded or reformed, a declaratory judgment should also be entered in all events affirming that BOA is not entitled to coverage or indemnification under any title policy for loss or damage alleged to arise from the foreclosure of the Security Atlantic Mortgage.

**COUNT I**
**(Rescission of Policy)**

43. First American repeats and realleges the allegations set forth in the foregoing paragraphs above as if fully set forth herein.

44. The Commitment provides that "If the Requirements shown in this Commitment have not been met within 180 days after the Commitment Date, our obligation under this Commitment will end."

45. MLD's failure to cancel the Security Atlantic Mortgage within 180 days after the Commitment Date, as required by Schedule B-I, Paragraph 4, of the Commitment, rendered it ineligible to receive a title policy.

46. BOA, as successor to MLD, also failed to demonstrate that MLD received a closing services letter for De Leon's conduct in connection with the closing, or that MLD transmitted any funds to De Leon that were allegedly mishandled.

47. Cognizant that the Commitment had expired, and that it was not otherwise entitled to receive a title policy without exception for the Security Atlantic Mortgage, BOA (and not its counsel or servicer) sought to procure a title policy from First American by directing its request for a title policy to the Policy Procurement Department that is unrelated to the Claims Services Department, and by mischaracterizing its request as an application for a "copy" of policy that it knew had not previously been issued.

48. BOA's request for a "copy" of a non-existent title policy, without exception for the Security Atlantic Mortgage, was made nearly two years after it tendered a notice of claim to First American concerning the BOA Mortgage, and after it had become clear that BOA was unable to present the proofs that First American had required in connection with its investigation of BOA's request for coverage.

49. BOA's request for a "copy" of a non-existent title policy was materially incorrect, misleading, and/or false when made, and was overtly or impliedly designed to create the false impression that BOA was entitled to receive a title policy without an exception for the Security Atlantic Mortgage through error, trickery, or deception.

50. BOA's request for a "copy" of a non-existent title policy was designed to induce First American to accept and rely upon its mischaracterization of the facts, and to issue

the Policy without an exception for the Security Atlantic Mortgage, which BOA was not entitled to receive.

51. BOA's materially incorrect, misleading, and/or false statements succeeded in inducing First American to mistakenly issue the Policy without an exception for the Security Atlantic Mortgage.

52. The Policy was issued in error, without an exception for the Security Atlantic Mortgage, four months before First American denied BOA's claim.

53. Rescission of the Policy will restore the parties to their pre-policy positions without prejudice to either of them or to innocent third parties.

54. Rescission of the Policy is warranted by the equities of this matter.

WHEREFORE, First American demands judgment in its favor, and against BOA, as follows:

a. Declaring and adjudging that the Policy (i) is rescinded, *nunc pro tunc,* (ii) is void *ab initio,* and (iii) is unenforceable in all respects;

b. Declaring and adjudging that First American is not liable for, or obligated to, indemnify BOA under the Policy;

c. Granting First American legal fees and costs of suit; and

d. Granting First American such other and further relief as the Court may deem equitable and just.

### Count II
**(Reformation of Policy)**

55. First American repeats and realleges the allegations set forth in the foregoing paragraphs above as if fully set forth herein.

14

56.  Any Policy issued to BOA in connection with the BOA Mortgage should have included an exception from coverage on Schedule B-I for loss or damage arising from the Security Atlantic Mortgage that was not cancelled and discharged within 180 days of the Commitment Date, as required by the Commitment.

57.  In an effort to procure the Policy without an exception for the Security Atlantic Mortgage, BOA did not direct its request for a policy to the Claims Services Department with which its servicer and counsel had been communicating, but rather to the Policy Procurement Department with which BOA instead communicated through a dedicated email portal for misplaced title policies.

58.  BOA's request for a "copy" of a non-existent title policy was made after it had tendered a notice of claim to First American, and after it had become clear that BOA would be unable to present the proofs necessary to demonstrate an entitlement to coverage.

59.  BOA's request for a "copy" of a non-existent title policy was materially incorrect, misleading, and/or false when made.

60.  BOA's request for a "copy" of a non-existent title policy was overtly or impliedly designed to create the false impression that BOA was entitled to receive the Policy, without an exception for the Security Atlantic Mortgage, through a mutual mistake of fact, a fraudulent misstatement, or unconscionable conduct.

61.  BOA's materially incorrect, false, or fraudulent statement succeeded in inducing First American to issue the Policy without an exception for the Security Atlantic Mortgage.

62.  As a result of First American's misapprehension of the facts, it mistakenly issued the Policy to BOA without an exception for the Security Atlantic Mortgage.

63. BOA is not entitled to coverage for the Security Atlantic Mortgage that it failed to cancel and discharge, as it was required to do in the Commitment.

64. BOA's incorrect, false, or fraudulent statement was of so great a consequence that to enforce the Policy as issued, without an exception for the Security Atlantic Mortgage, would be unconscionable.

65. The Policy should be reformed, *nunc pro tunc*, to include a new paragraph on Schedule B-I that recites that the Policy does not insure against loss or damage, and that First American will not pay any costs, attorneys' fees, or expenses, that may arise by reason of the Security Atlantic Mortgage.

66. Reformation of the Policy as aforesaid will not cause serious prejudice to BOA.

67. Reformation of the Policy is warranted by the equities of this matter.

WHEREFORE, First American demands judgment in its favor, and against BOA, as follows:

a. Declaring and adjudging that the Policy is reformed, *nunc pro tunc,* to include a new paragraph on Schedule B-I that recites that the Policy does not insure against loss or damage, and that First American will not pay any costs, attorneys' fees, or expenses, that may arise by reason of the Security Atlantic Mortgage;

b. Declaring and adjudging that First American is not liable for, or obligated to, indemnify BOA under the Policy;

c. Granting First American legal fees and costs of suit; and

d. Granting First American such other and further relief as the Court may deem equitable and just.

## COUNT III
**(Declaratory Judgment)**

68. First American repeats and realleges the allegations set forth in the foregoing paragraphs above as if fully set forth herein.

69. The Policy was erroneously drafted insofar as it failed to except from coverage loss or damage attributable to the Security Atlantic Mortgage.

70. BOA's failure to cancel the Security Atlantic Mortgage within 180 days of the Commitment Date, to demonstrate that MLD received a closing services letter for De Leon's conduct in connection with the closing, or to demonstrate that MLD transmitted any funds to De Leon that were allegedly mishandled, precludes any claim for coverage under the Commitment, Policy, or any other instrument.

71. There presently exists an actual controversy between First American and BOA concerning: (i) BOA's alleged entitlement to receive the Policy, (ii) the terms of coverage to which it would be entitled, and (iii) First American's obligations under the Policy that was mistakenly issued to BOA without exception for the Security Atlantic Mortgage, as set forth above, all of which may be resolved by a declaratory judgment of this Court. Accordingly, this matter is ripe for adjudication.

72. By reason of the foregoing, a declaratory judgment is both necessary and proper, pursuant to 28 U.S.C. §2201(a), to set forth and determine the parties' rights, obligations, and liabilities, if any, upon rescission or reformation of the Policy.

WHEREFORE, First American demands judgment in its favor, and against BOA, as follows:

      a.      Declaring and adjudging that (i) the Policy is rescinded, *nunc pro tunc,* (ii) the Policy is void *ab initio* and unenforceable in all respects, and (ii) BOA is ineligible for indemnification under the Policy, as rescinded;

      b.      Alternatively, in the event that the Policy is not rescinded, declaring and adjudging that the Policy is reformed, *nunc pro tunc,* to reflect on Schedule B-I that it does not insure against loss or damage, and that First American will not pay any costs, attorneys' fees, or expenses, that may arise by reason of the Security Atlantic Mortgage, and, therefore, BOA is not entitled to coverage or indemnification for any loss or damage attributable to the Security Atlantic Mortgage;

      c.      Declaring and adjudging that, in all events, any claim made by, or on behalf of, BOA that relates to, or results from, the Security Atlantic Mortgage is ineligible for coverage or indemnification under the Policy, regardless of whether it has been rescinded or reformed;

      d.      Granting First American legal fees and costs of suit; and

      e.      Granting First American such other and further relief as the Court may deem equitable and just.

                                          SILLS CUMMIS & GROSS P.C.
                                          Attorneys for Plaintiff
                                            First American Title Insurance Company

                                          By:  */s/ Jaimee Katz Sussner*
                                                  JAIMEE KATZ SUSSNER

Dated: May 18, 2020

## **Local Civil Rule 11.2 Certification**

Pursuant to Local Civil Rule 11.2, the undersigned attorney for Plaintiff certifies that, to the best of her knowledge, the matter in controversy is not the subject of another action pending in any United States court or in any arbitration or administrative proceeding.

                                      SILLS CUMMIS & GROSS P.C.
                                      Attorneys for Plaintiff
                                         First American Title Insurance Company

                                 By:  */s/ Jaimee Katz Sussner*
                                        JAIMEE KATZ SUSSNER

Dated:  May 18, 2020